PROVOSTY, J., takes no part, not having heard the argument.

---

(61 South. 685.)

No. 19,773.

Succession of SWANSON.

(March 17, 1913. Rehearing Denied April 14, 1913.)

*(Syllabus by the Court.)*

WILLS (§ 130*) — VALIDITY — OMISSION OF DATE.

Assuming that the will of decedent was mutilated by the universal legatee in the presence of testator, and that the latter, instead

of writing a new will, attempted to reconstruct the old one by pasting the fragments thereof on a sheet of paper, but omitted one showing the last two figures of the date of the year, the testament so reconstructed is null and void for want of a complete date. An olographic testament must be wholly written, dated, and signed in the handwriting of the testator. Rev. Civil Code, art. 1588.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 336, 338–340; Dec. Dig. § 130.*]

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Succession of Alexander S. Swanson. From an adverse judgment, Mrs. Melanie Levy appeals. Affirmed.

Chas. F. Claiborne, of New Orleans (A. D. Danziger, of New Orleans, of counsel), for appellant Mrs. Melanie Levy. McCloskey & Benedict and Dart, Kernan & Dart, all of New Orleans, for appellees. Richard Lyons, of New Orleans, for appellees absent heirs.

LAND, J. A rehearing was granted in this cause, and the case was remanded "for further evidence and trial, especially on the point of what was the state or condition of the will at the time of its presentation for probate—whether any fragment now missing was then present." See 131 La. 53, 58 South. 1030. The cause has been tried anew, and from an adverse judgment Mrs. Melanie Levy has again appealed.

The judge a quo in his reasons for judgment says:

"Two witnesses for legatee testify that an additional piece or 'sliver' of paper was in the will when the probate was made, and that it is now missing. Messrs. Garidel and Ducoing, experts in probate matters, have no such recollection, and they with Mr. Lynch drafted the probate, and were aware of the importance of the minutest scrap of writing. The court will therefore render the same judgment."

Mr. Garidel, the minute clerk of the court, testified that the procès verbal of the probate of the will was drafted under his personal supervision by Mr. James Lynch, since deceased; that the document purporting to be the will of the deceased had no year date except the figures "19," and the small detached piece of paper presented at the same time disclosed parts of two figures resembling "01," and that the small piece was attached to the will at the time the procès verbal of the probate was written. The same witness testified that both pieces taken together did not, and do not, disclose an "0" between the 9 and the 1, but a marking which resembles the letter "P," and also that it is possible that a very small portion of the "1" may have been rubbed off in handling the document. The witness further testified that there was no other piece of paper of any kind attached to or presented with the will. An inspection of the procès verbal shows that the mark after the figures "19" represents a line curving to the right, and that the only figure appearing on the detached piece of paper was the figure "1." The evidence renders it practically certain that no other detached piece of paper was presented with the document purporting to be the last will of the deceased.

An inspection of the main document as presented for probate shows that it had been torn across in several places, and that in the upper right-hand corner the date of the year, excepting the figures "19," had been torn off, and that all the pieces, except the one so torn from the upper right-hand corner, were subsequently pasted on a sheet of letter paper. The detached scrap of paper presented at the time of probate is several times smaller than the piece which had been torn from the said corner, and the figures thereon have been so mutilated as to render their identification impossible with any degree of certainty. The fraction of a straight mark appearing on the detached scrap may represent the beginning of the figure "6," as well as of figure "1," and the other mark is meaningless.

No witness can swear with any degree of assurance that the mutilated figures in question were written by the deceased; or, if so written, that they form part of the date of the will. The scrap could have been taken from some other writing of the deceased. If, after the will was torn up, the deceased attempted to reconstruct it, he failed to do so by the omission of the material portion evidencing the date of the instrument, and the will is therefore null. An olographic will must be wholly written, dated, and signed in the handwriting of the testator. Civil Code, art. 1588. On the first trial of the case the universal legatee testified in part as follows:

"Q. When this will was pasted together, what became of this slip containing the date?

"A. I can't remember.

"Q. Who did you say pasted it together?

"A. Mr. Swanson.

"Q. When the will was destroyed, where was it destroyed?

"A. It was destroyed in my dining room.

"Q. What became of the fragments?

"A. Mr. Swanson asked me for it, and I gave it to him.

"Q. When you tore it up, did you throw it on the floor?

"A. I held it in my hand; it was not very long; I held it in my hand, and he took it away.

"Q. Did he preserve all the pieces?

"A. He went into his room and I went about my household duties.

"Q. I am trying to identify this missing piece?

"A. When he went into the room and pasted it together and that is all."

On the last trial the universal legatee testified in substance that there was missing a small piece of paper that was there when the will was probated, meaning that a portion of the detached scrap presented with the will is missing.

The judge a quo ruled against the universal legatee on this issue of fact, and we see no good reasons for reversing his conclusions.

Judgment affirmed.